Hello, thank you everybody for convening remotely today. We're going to hear argument this morning in number 21-188 and 21-1101, Goney v. SuttonPark Capital. We'll hear first from the appellant, Ms. Joffrey. Can you hear me, Your Honors? Yes, we can. All right, good morning, Your Honors. May involve three plaintiffs, Rodney and Lori Goney, and Trevin Noel, who were harmed by the actions of defendants SuttonPark Capital, SuttonPark Structured Settlements, and Edward Stone. There are five issues that are subject to this appeal. We believe the District Court incorrectly did not give leave to file an amended complaint as plaintiffs requested in their responses to defendants' motions to dismiss. The District Court incorrectly granted SuttonPark Capital LLC and SuttonPark Structured Settlement LLCs, which I'll collectively refer to as SuttonPark, motion to dismiss under 12b1 as to plaintiffs Lori and Rodney Goney. The District Court incorrectly ruled that Trevin Noel's power of attorney, Rodney, could not bring suit on his behalf. The District Court also incorrectly ruled that Trevin did not have standing to sue Edward Stone. The District Court furthermore incorrectly ruled that Lori and Rodney Goney's claims against Stone lacked merit. We're asking you today to reverse these decisions by the District Court and remand them so that this case can continue. So first, under Rule 15a2 of the Federal Rules of Civil Procedure, it states that a court should freely give leave to amend a complaint. Plaintiffs were not given any opportunity to do so in this matter, and the court gave no explanation as to why it did not give us leave to amend. In a SOMA court, this court found that outright refusal to grant leave to amend without providing any reason for doing so is abuse of discretion, such as the case here. There's no undue delay in this case, as was the case in Ginn, another Second Circuit case. The case was only alive for six months in this matter when the court dismissed plaintiffs' claims. Next, RICO Civil, sorry. Can I ask, so the defendants say that leave to amend would be futile in this case, so can I ask how you would fix the claims? So let's think about them. So with the RICO claim, why isn't it that you're trying to, the parents are trying to recover for injuries to their daughter? Okay, so RICO Civil liability is pretty expansive, so the statute states that anyone who is injured in his business or property by reason of violation. Didn't you, your client, spend this money voluntarily? And the problem here, of course, they did something that they ought to have done. They did something that was very nice. Their daughter had gotten money, had thrown the money away. She settled the case in some other ways with these defendants. Your clients voluntarily spent a lot of money, and that's very nice of them, but how does that give them a claim? Well, Your Honor, there is such a thing as loss of consortia, and when it comes to foreseeability of a claim by a plaintiff or the district court, it's not just limited to that individual. They haven't lost consortium with their daughter. Their daughter's not deceased, right? They have taken her in because she can no longer support herself. No, correct, but I mean, if you look at Blue Cross Blue Shield, which is not a Second Circuit case, it actually was in the Eastern District of New York, and I don't believe it was ever repealed from. The district court stated that losses to a parent or to a child are foreseeable to a tortfeasor, so that could be an economic. I'm not terribly interested in what some district court did. I want to know why under the Constitution you have any standing to spend money and then voluntarily and then say that because you've spent it voluntarily as a result of some bad stuff that somebody else did that you have a right to come around there. Well, Your Honor, the reason that we believe that is because of the foreseeable standard, the foreseeability standard, in Bonseigneur versus the City of New York, which was actually a really unusual case. So Officer Bonseigneur was instructed by the city to carry a weapon with him at all times. I suppose you have an argument. If the daughter were a minor, I guess it would be reasonable to say that the parents would have to take care of her, even if they could put the daughter up for adoption or something. We would never say they're obliged to do that, right? And so maybe if an adult child is incapacitated, you would say there's a similar relationship or a similar duty, and then maybe the parents have an injury if the daughter is cheated out of the means to support herself. Do you have an argument here that the daughter was incapacitated? I mean, she hasn't been rendered incompetent, but I suppose you have allegations that say she was plied with drugs and so on. I mean, is there an argument to that effect that you have? Your Honor, when the daughter was 15 years old, she suffered from a traumatic brain injury. And I think in the record at the district court level, I had submitted documentation to the doctor. Yes, but we can't go around saying that people who are not held incompetent are incompetent. Was she at any time, was any action taken so that your clients were in some sense responsible legally for the behavior of this person? Once she actually was, once she had given away all her, signed away her money involuntarily without her really understanding that she did that, her parents did take control over her affairs. She gave them... And how was that Sutton Park's problem? Well, your Honor, Sutton Park was aware the entire time that Lindsay Noelle had a severe problem. She had a traumatic brain injury that her parents were taking... I think to judge Calabrese's point, you know, it's not, she was living on her own and acting independently and she hasn't been adjudicated to be incapable. I guess what I was suggesting was maybe you have allegations that even if she was not generally incapable of looking after herself, she was rendered that way by the defendants, by their conduct, by applying her with drugs or keeping her apart from a social support network. Is there a way to make an argument that under the circumstances here, it made sense that the parents taking care of her would be the natural consequence? Well, yes, Judge. I mean, Sutton Park was the but-for-cause of her signing over her annuity. She wouldn't have done that otherwise. But counsel, if she were so incompetent, how could her settlement against these defendants have been approved by the court? Your Honor, that's actually a great point, which I brought up... In this very case with the court, with the defendants, and settlements have to be approved. So if a settlement was approved by a court... Your Honor, they're approved all the time. They're approved all the time. That's a big problem. Well, they may be approved all the time. I mean, I suppose under your allegations, the signing over of her annuity was also approved by the court, but in your complaint, you allege that the court was tricked in a lot of ways, that there was a drug test that was false, and there was a cognitive test that was manipulated. And so do you have an argument, or do you think it's possible that, in fact, the settlement here shouldn't have been approved, and maybe the court that approved it wasn't aware of all the circumstances? I apologize for this noise right here, but that is definitely the case. And we talked about in background of our complaint that the Structured Settlement Protection Act has been enacted in several states. However, it's not followed in a lot of these cases. A lot of the judges don't even lay eyes on the individuals who are signing away. I understand, but we're not making a statement about how this happens generally. We're talking about this individual case, right? And so in this case, is there a question? So the allegations that we have about her settlement of this lawsuit of her claims against Sutton Park are ambiguous. We don't really know the scope of the settlement or the circumstances under which it was entered into. I mean, can you tell us something more about the scope of the settlement or whether it was entered into? Two things. One, is there anything in your complaint that alleges that adequately? And two, have you at any point suggested something in a possible amendment to your complaint that makes such allegations? At the time that the district court turned down your request for amendment, did you put to the district court any suggestions of the sort that Judge Menashe has presented to you? Yes, Your Honor. In the allegations in the complaint, we did state that she was not competent when the First Structural Settlement was actually- Incompetent in general language is one thing. Did you say something about her being in fact incompetent in a legal sense amid the decision, the acceptance of her settlement was in some way flawed? Yes, Your Honor. We said that she was drugged. We said that she was in a drugged state. So I do feel that we can- At what time? When the settlement was structured? When she sold her interest? What was it? When she sold her interest, Your Honor. Right. You don't have allegations that she was drugged when she settled with Sutton Park, but we don't know the circumstances under which she settled with Sutton Park. Is that right? Correct. I didn't produce that settlement agreement. I believe since it's covered by complaint. But then again, I mean, I could have produced it as part of the amended complaint, but I was just never given the opportunity to do so with my client. So if that were relevant and the judge needed to see it, that could be part of an amended complaint. Can I ask more directly how you'd fix some of these allegations? So I understand there are these RICO claims against Sutton Park, and maybe there's an argument that she's essentially incompetent or like a child. I don't know, but we just explore that a little bit. The claims of Trevin against Sutton Park, I take it that you're saying that an amended complaint would say that the grandparents have power of attorney, which gives them the right to sue. Is that right? Correct. Which I thought I had said in the first complaint, but I don't know that. Even if they have the right to sue. For the moment, assume that you either had the right to sue or could amend to make the right to sue. What then do you have that is standing with respect to his claims? This was a minor child in the care of his mother. And again, doesn't that all turn back to a requirement that the grandparent be incompetent? Because you say he was held in a hotel, virtually kidnapped, but he was there with his mother. So unless his mother was incompetent in some legal sense. So that is my question as well, which may be, and I can just add this additional thing for you to answer, which is what is the harm that he suffered from the alleged abductions? Well, your honor, Sutton Park was the but-for cause of him being held there and they were drugging his mother. So essentially they were taking over as a fiduciary for him when they were rendering his mother incompetent right in front of him. So even if that's true, I guess, what would he be trying to recover from that experience? What are the damages? Well, there's definitely emotional distress from a situation like that. Well, the intensity of emotional distress in New York is an extraordinarily difficult case to make out. It's extraordinarily difficult. They get, you know, that's what I've been teaching for 60 years. They get thrown out all the time. And somebody who was held in the care of his mother, when his mother maybe was drugged up, very hard to make out. You know, I haven't seen a case in New York that comes close. Understood, your honor. But I do think that these are really extenuating circumstances. I don't know that I've seen that many cases in New York either where a company is drugging the mother while the child is in custody. Okay. And then, so in addition to the claims of the parents and the child against Sutton Park, there's the allegations against the attorney. So what would you add in an amended complaint that would make out a claim against the attorney? Well, in the exhibits, I included emails from Lori Ghani to the attorney regarding some collusion that was going on between Mr. Stone and Sutton Park, especially their general counsel, Fred Love. I don't think that was correct. So the allegation is that he was colluding with the other side or was coordinating with them somehow. But it sounds like the evidence you have of that is just because they had interacted on one prior case. Is there more evidence of that that would establish that kind of like more factual material that would establish that sort of collusion? Well, I believe that Ms. Ghani actually had additional conversations with Mr. Love. I'm sorry, not Mr. Love, with Mr. Stone that I could include as part of the complaint that may fix our allegations against him. Excuse me, Stone was not responsible for the structured settlement. Didn't that occur after he was no longer the lawyer? He was hired after, Judge. If I may, I have another problem. If that is to make out a malpractice suit against an attorney, one has to show that but for what the attorney did, you would have won the case. In the malpractice suit, there's always a secondary thing that regardless of whether the attorney had behaved badly or didn't do things, that you would have won the suit. But that brings us back to everything that we were talking about before. Because if you don't have a claim of any sort of a merit against the others or don't have a standing, then even if the attorney behaved badly, what are your damages? Your Honor, may I just speak to that for one second? So Mr. Stone, Patrick Jones was an attorney who took over for Mr. Stone when Mr. Stone was not doing what he was supposed to do. Patrick Jones was able to get a successful settlement with Sutton Park Capital. There was another company that was involved that Lori Ghani actually hired Mr. Stone to go after for the same kind of settlement. And he didn't do so. And he kind of blew the statute of limitations on that so he can no longer pursue that. I did not plead that in the complaint. And that is something that I could plead in an amended complaint. But so you're seeking leave to amend to add a totally, not to a defect in the complaint, but to add a totally different claim against Stone? Well, I think the claims would be similar. It would still be breach of fiduciary duty. It would still be legal malpractice. But I think the facts would be slightly different. Do you have a claim against Stone that you would have prevailed in this in the litigation against Sutton Park, but for his conduct? I believe that the collusion was, does rise to the level of legal malpractice. The District is whether he would have prevailed here, right? And so if there's a problem about asserting the rights of Lindsay, I mean, I suppose maybe you could argue that if, but for Stone's involvement, Lindsay wouldn't have settled. I don't know if that argument would work, but you have that kind of argument that pursued that sort of claim? I mean, did Lori Ghani hire Stone to represent Lindsay? Does she have an interest in his conduct with respect to Lindsay? I don't know the answer to that. Actually, I'm curious what you'd say. Lori and Lindsay actually signed the engagement letter with Stone directly. Our position is that also Rodney Ghani and Trevin Noel were clients of Stone. The District Court said that Rodney Ghani was a client of Stone, but it didn't reach the question or didn't, it disagreed that Trevin was a client of Stone. And I just don't understand why, we don't understand why. The District Court never provided any sort of analysis. Why does it matter whether Trevin is a client of Stone? What claims does he have that Lori Ghani does not have against Stone? Well, I would say that it's a little different because Lori Ghani is the mother, so she's the caretaker and she's incurred substantial expense due to Lindsay selling off her annuity while Trevin was a beneficiary of the annuity. That was the way he was supposed to survive as a child. Right now, he has no real source of survival besides his grandparents. Okay. And how is that the responsibility of the attorney? How is Trevin's? How is the fact that he was left with nothing because she sold off her interest, the responsibility of the attorney? In other words, where's the causation here? Well, Your Honor- The attorney was responsible for that. Your Honor, I would think that the attorney has a fiduciary duty to his clients and he has to act in their best interest. I don't think that- I would think your claim is that she would have recovered the annuity, but for his collusion with the other side. Is that your argument? Correct. Correct. Wow. Okay. Well, you- Oh, so go ahead. And that her recovery of the annuity was the source of all of these problems. And so if the attorney did wrong by getting her what was a reasonable amount, but that if the attorney had said, this is a drug dealer. And so she, I am her client, I am her lawyer, but rather than getting her money, I should keep her from getting money because when she gets money, she will spend it. That's what you're saying the attorney did wrong, essentially. No, the attorney just didn't. He didn't do anything, unfortunately. That's why Patrick Jones and other attorney had to come in and tell him he was fired and he had to accomplish what he had eventually accomplished. He had to settle with Sutton Park. Oh, I see. So the first- That's right. Didn't even get the settlement. No, because he refused to act. He refused to take any action on behalf of the clients. How do you know your clients would have done better with Stone? Well, Stone was the one who was actively prohibiting a settlement from actually transpiring. I'm sorry. I thought we had in the record settlement documents that have Stone's, or at least a space for a signature from Stone on them. Is that correct? That was the undrafted document. So Stone was stonewalling. I'm sorry for the irony here, but Stone was stonewalling in terms of getting the settlement done. That's why Patrick Jones had to come in and take over as the lawyer. So the one that I submitted was- And you're pointing out, you're trying to say that Stone would have gotten a better settlement? I don't think Stone would have gotten a settlement at all or would have accomplished anything because he was- A council. A council. If a settlement is the source of the problem, because if there had been no settlement and she had just continued to get her money on the annuity, then all would have been well. Then how does the fact that the lawyer, perhaps for the worst of reasons, didn't bring about something which you say is the source of all the trouble, can make that lawyer be liable for anything? Had you just stuck with that lawyer, she'd still be getting her annuity? No, she lost her annuity at that point, Judge. She had lost her annuity already at that point. She was not getting any annuity whatsoever. That's when she had turned over affairs to her parents because she was broke. So once Stone was involved, there was no more annuity. The settlement with Sutton Park was about getting some compensation back from Sutton Park after they had wronged her. Right. Okay. I think we have that argument. You've reserved time for rebuttal, so we'll hear from you again. Let's turn to the appellee first for the attorney counsel for Sutton Park, Ms. Bidel. Thank you, Your Honor. May it please the court, my name is Jennifer Bidel with Saul Ewing Arnstein and Laird. Together with my colleagues, I have the privilege of representing the Sutton Park entities in this appeal. Your Honors, from plaintiff's argument, two words arose in my mind. The first is guessing and the second is second guessing. As to guessing, Ms. Joffrey asked this court to guess as to what amendment she would propose that would cure all of the fatal defects inherent in her 118 paragraph complaint below. She asked this court to guess because neither in the court below nor before this court has she proposed a curative amendment that would address any of these defects. There are a few specific things. So one, I guess I have a question about, which is you say in your brief, not all powers of attorney are created equal and they didn't put forward evidence showing that the power of attorney here of the grandparents over Trevin authorized them to sue on his behalf. But it seems like the plaintiffs say that the power of attorney did authorize them to sue and that they could say so in an amended complaint. Why would that not be enough to show that they could sue on his behalf? Your Honors, Ms. Joffrey represented that here. We've seen no evidence of that below or in the record as proffered. Also, they separately alleged that the question about whether it's true or not is a different question. I'm just asking if in fact they do have a power of attorney that gives them the right to sue on their behalf, would that have authorized them to sue on Trevin's behalf? Would that cure the defect that the district court identified? They have separately alleged, Your Honor, that Lindsay maintains custodial authority over Trevin. There are situations in which people who have power of attorney also have custodial authority in a way that allows them to sue. And there is at least something of a suggestion that they might be able to make a claim. My problem then remains, is there anything to that claim? Because if not, then we don't get anywhere for another reason. But at the first point, it's hard for me to buy your argument that they couldn't make an amendment out of a complaint which would raise a question of fact as to whether they had that power. Your Honor, if we assume for purposes of this argument that they have a good faith basis under Rule 11 to allege that they have a power of attorney over Trevin sufficient to allow them to bring suit on his behalf, then I do believe that the analysis would turn to the validity of the claims at issue. And for reasons already noted by this court, there are fatal defects in the substance of those claims as well. For example, with respect to the RICO claim, Ms. Joffrey points the court to foreseeability, but there are many other elements of RICO claims that have to be met, like a direct relationship. But the power of attorney, we're talking about claims that Trevin would have. So the question, I suppose, would be whether he could show harm from the abductions. Correct. That is a question that would also exist. It is a question, and maybe he wouldn't, but the district court never reached that issue, right? Whether they could allege a harm from the abductions. The district court reached a decision that it was strict subject matter jurisdiction based on fatal flaws on the face of the complaint, the lack of standing here, which is jurisdictional to the court. The district court made a futility finding as to leave to amend, which can factor in all- Wait, the district court made a futility finding? I didn't see the district court make a finding about why there was no leave to amend. It seems to me the district court didn't address that question. If this court looks to the face of the order, the only logical conclusion from the face of the order is that leave to amend is denied as futile based on- You're saying we could infer from the order that the district court decided leave to amend was futile, even though the district court didn't say anything about denying leave to amend. Your Honor, whether or not the particular word futility is in the order or not, this court- But the words leave to amend are also not in the order, right? Leave to amend is denied, Your Honor, in the order. Yes, those words are in the order. But this isn't an administrative law case, and we can affirm for any reason, even if the district court didn't do it, so that if we were to find, and I'm not saying that we in any way because he was in his mother's control and his mother was not declared incompetent, et cetera, et cetera, et cetera, then we can say that amendment would be futile. But you don't want to tell us that that's what the district court said, because the district court didn't say it. So tell us what we should do, and maybe we'll buy it, but don't tell us what the district court did when it didn't do it. Correct, Your Honor, and I don't mean to imply that a word was in the order that wasn't in the order. I think Judge Hellerstein did deny leave to amend. He obviously had to have a basis for that decision. This court can make an independent finding, as you note, and I think the finding here is that there is futility of amendment on a number of grounds, the first of which is standing as to parents. We've discussed standing as to Trevin, but as far as standing as to the parents, there's been no proposed amendment that would address the standing question as to the goanies. What about the questions I was asking opposing counsel? So I don't think you dispute that if Lindsay were in fact incompetent, was obviously dependent on her parents like a minor would be, then maybe the parents would be able to seek recovery for harm against her because it would be clear and a natural consequence that when she lost her livelihood, they'd have to support her. Would you agree to that? I understand you think that's not the facts here, but would that be the case? That leads me back to my second theme from Ms. Joffrey's argument, Your Honor, which is second guessing. So Ms. Joffrey asked this court to second guess at least nine other courts. I don't care about that. I'm just curious about like just hypothetically, if in fact, Lindsay were incompetent and it was beyond question that she was going to be dependent on her parents, that would strengthen their claim. Would they have a claim under those circumstances? I don't believe so, Your Honor, because there doesn't appear to me to be a separate allegation that she was incompetent at the time that she settled the claims as well. I'm asking hypothetically in a different case, not this case. If you had a case where a adult child of parents was actually incompetent, let's say was adjudicated incompetent, and so it's beyond question, would they be able to have a claim to recover for some harm that led them to need to expend additional money in the care that they were going to conduct? Isn't that it's very much like the Blue Cross cigarette case where there was a duty to spend money? Yeah. So if that existed, I think, would you say that they would have a claim like the Blue Cross case? You're just saying this is different than that. Correct. In an entirely different set of facts where the adult. Okay. So then I guess my question is this. So if in fact they have allegations that even if Lindsay was not generally incompetent, but she had been rendered incompetent by the defendants giving her drugs and cutting her off from a support network and all of that stuff, would it not be possible to allege that under these circumstances, she looks a lot like that sort of a claim? No, Your Honor, not in these circumstances. Nine other courts have adjudicated her competent. It's not appropriate for the plaintiffs to ask Judge Hellerstein to reverse the decisions of nine other courts as to competence when those findings exist, regardless of the facts that are out there. Maybe she wouldn't ultimately prevail, but we're on a motion to dismiss, right? And the allegations are that there was a deception directed towards those other courts with a fake drug test and a cognitive test and all of that. And there's allegations at least that the defendants cut her off from contacting her family and plied her with drugs that rendered her unable to make decisions. So don't we have to take those allegations seriously on a motion to dismiss? Why wouldn't that be enough to say she was basically rendered incompetent under these circumstances? This court has to take all well-plied facts as true on a motion to dismiss standard, but facts aren't well-plied when they're contradicted by other facts that are plied within the face of a document. Don't you want to say that given what different courts have held about her competence, any statement about competence of that sort would not be plausible under the standard of Iqbal? That's correct, Your Honor. Those are not well-plied facts because they would be contradicting the findings of nine other courts. They're not facts that have to be taken as true. Well, if the defendants' other courts have found that she's generally competent, and the allegation is she was rendered situationally incompetent, would there necessarily be a contradiction between those allegations and what other courts have said? The other courts were finding competence as to entering the settlement of her claims in these specific circumstances. Well, not the settlement. We have a finding about her competence to enter into the sale of the annuity, right? The allegations here are that the court that approved that had a falsified drug test and a falsified cognitive test, right? Eight courts approved the sale of the annuity. One court approved the settlement. There are some allegations as to incompetence at some of those times. You're saying the allegations can't cover all of those decisions? That's correct, Your Honor. Counsel, I'd like to focus on one thing. Somewhere in this record, it says that there was a settlement after the original settlement between the daughter, Lindsay, and you about the issues that they are now suing for now. Am I correct that there was such a settlement? You are correct, Your Honor, and we believe that cover... When did that settlement occur? Just about before this suit was brought? That is the second settlement. It occurred prior to this suit, Your Honor, being brought? Just prior. And was but after the events in the hotel and all of that stuff. Correct. Substantially after. Now, stay with me a second. Was that settlement approved by a court? Yes, Your Honor. So are you saying that whatever the situation may have been at another time, at the time that we're talking about speaking about the harm to the child and all of those things, that a court approved her capacity to make that settlement? That's correct, Your Honor. We are saying that. Your statement, not with respect to nine other courts or so on, is that given that, a statement that she was incompetent at that time, in some non-legal sense, would not meet the standard of equal. That's correct, Your Honor. Yeah, but whether she was competent or incompetent at the time of the settlement with Sutton Park is not, that doesn't, that might affect their claims against the attorney, but it doesn't affect their RICO claims against Sutton Park because that happened after all of the conduct for which they seek to recover on their RICO claim, right? With respect to their RICO claim, there would be separate questions whether she was competent. But just in terms of the answer you just gave to Judge Calabresi, so even if, I don't know if a settlement, but even if it had, that settlement happened well after the conduct that the parents allege, seek recovery for, that happened with respect to Lindsay, right? So the relevant time period for her to be competent was when, you know, she was abducted, she signed over the annuity and so on. It would not be when she signed a settlement later on with Sutton Park, would it be? If she later regained competence, which our allegation, Your Honor, would certainly be that she was competent the entire time, but assuming she was incompetent and regained competence, and then she exercised her rights as a competent adult to settle these claims, that's a final adjudication of these issues and it does not establish standing on the part of these plaintiffs. Okay, so that's fair. So you're saying that if she, in fact, was competent at that later time, then there's no reason to allow the parents to have this suit. But if she was, but I suppose that means that they couldn't pursue invalidation of the transfer of the annuity, but if they have a claim for recovering the expenses they paid, if she was incompetent, wouldn't it matter that she was incompetent during that period? I'm afraid that would be a claim against her because she was competent to make a settlement for that. So if they spent money on her behalf, they'd have a claim against her. Oh, no, but this question is whether, all right, I think I have the argument. Do you want to say something to wrap up? Sure, Your Honor. At base here, there are fatal flaws that cannot be amended that we've discussed at length. This court can affirm on the grounds suggested by Judge Hellerstein or separate grounds on all of those defects, including lack of standing, including inability to prove causation. And as a result, we request respectfully that this court affirm Judge Hellerstein's correct decision. Okay. Thank you, Ms. Beidell. We'll hear now from the other appellee, Mr. Procia. Good morning, Your Honors. May it please the court. The first thing I wanted to address is it came up in both questions of appellants and co-appellee Sutton Park. With respect to the argument of whether or not futility exists and whether or not plaintiffs preserved the request to ask for leave to replead, I just want to note for the court that the only request that was made to the underlying court, Judge Hellerstein, was a one-sentence footnote to the court that basically said, if you find any deficiencies, please let us replead. Nothing with regard to detail as to how to replead, nothing with regard to detail as to what claims or substance would be pursued. And as Judge Menashe was pointing out, what came up today and for the first time, not even in the appellate briefs, with regard to Judge Stone, Attorney Stone, a plaintiff is now basically making an argument that wants to end a new case. Here is my question. When that happens, shouldn't a district judge say to the party, okay, you have a right to replead if you can tell me some things. That is, you know, somebody comes in and says, I'd like to replead. You wonder whether this would be futile. So you say, go back as a district judge and say, tell me what kinds of things you'd like to say. Wouldn't that be a more appropriate procedure than simply say, I can't believe they could come up with something. They haven't given me something. I'm just going to cut them out. Well, I think it comes down to the standard of essentially trial court discretion on whether or not they want to grant the leeway when plaintiff isn't frankly advocating any substance to as what the amendment would be and that there would not be a futility as to those amendments. If the standard is the district court should freely give leave to amend, I mean, and they made a request, then before the district court denies it, shouldn't the district court at least consider whether it would be futile? So you're saying that they didn't propose an amended complaint, but they did make a complaint? Yes. And I understand rule 15 is liberal as to extensions and allowance of leave to replete. I've been in front of many judges that have as an automatic response. Your point would be that whatever happened then, between then and now, they've had an awful lot of time to tell us what they would say. So whatever their harm and not being given that opportunity then, by now sitting before us, we can look at what they tell us they would do and see what that makes any difference. Correct, Your Honor. And frankly, along those lines, the allegation frankly made by counsel and not by her clients as to alleged blown statute of limitations didn't even come up in the open and appellate brief. It only came up in the reply brief after we had- But you're saying it didn't come up in the reply brief. But I think Judge Calabresi was suggesting that even if the plaintiffs were harmed by not giving the opportunity to show what they would add in an amended complaint before the district court, they haven't done so up until this point. You're pointing out information that maybe would make a difference. So in fact, if what they say now were true, that your client was colluding with the other side and intentionally delayed the procedures so that they blew statutes of limitations, could those kinds of allegations not form the plausible basis for a malpractice claim? No. And the point I want to make that also again came up today in the most substance I've seen thus far is a concession by plaintiffs that Lindsay, subsequent to Mr. Stone, did settle this case. So Lindsay has been paid. So what are the damages that Lindsay sustained? And what are these side damages that the plaintiff's parents and the plaintiff's son have sustained? She received a settlement. The allegation has been that Mr. Stone didn't get the settlement. Our primary argument is settlement negotiations fall strictly within attorney judgment rule. However, can you clear that up for me? So we have in the record these drafts of settlements that have a signature block for Mr. Stone, but now it's just been said that he wasn't involved in the settlement. So did he draft settlement papers and then they broke off the relationship after that? Or he was not working toward a settlement? I admit to the court, I did not go back and review my client's file before I came in here today. However, my recollection was that Mr. Stone effectuated the settlement on behalf of Lindsay. Sorry. So then he did effectuate the settlement. That was my understanding, but there was an allegation by plaintiff. I'm sorry? So that's your position that he did effectuate the settlement and obtained it. That's my recollection. And I apologize if I'm wrong. If, in fact, the purported allegations were right that he was colluding with the other side and was not seeking an optimal settlement for his clients and his efforts resulted in the termination of the litigation, would that not be a plausible basis for a malpractice claim? You dispute those facts. I understand you say that he wasn't actually colluding, but if, in fact, he were and they were correct that he obtained a suboptimal settlement and then terminated the litigation, would that not be the basis of a plausible claim? They're not plausible in this case because the allegations of collusion are angry emails by Lori Goney saying to Mr. Stone, I can't believe you're not getting my daughter basically a better settlement. You must be colluding with the other side. Don't we have an additional problem? And that is that Lindsay then made a second settlement on the basis that the first settlement was inadequate. So that if the second settlement was not in any way flawed and we don't have any claims of that, then how does the damage from the first settlement persist when a second settlement has resolved it? So we have some problems with finding that even if there was a collusion and the first settlement was inadequate, wasn't that cured by the second? Correct, Your Honor. That was the point that I was trying to make to say, where are we enough? When we talk to your client, the only settlement that's relevant is the second one, right? So the allegations of collusion are about the second settlement, right? Or about what Judge Calabresi is calling the second settlement, which is. I understood Judge Calabresi because of plaintiff's appellate counsel's assertion that subsequent counsel made a settlement that there's potentially a second settlement. Oh, so if it were true that your client obtained a settlement with Sutton Park and then there was a second settlement that settled any claim that that settlement was defective, that would, you're saying, cure the problem. But I don't think, but the complaint doesn't say that. No, frankly, the complaint doesn't say anything with regard to Budford causation. It doesn't say what the substantive claims they had against Sutton Park or any of its affiliates. Well, just to go back to your earlier answer when you said that it was, it's just the assertions of the mother. I mean, I think maybe you have an argument that this is very thin factual matter, but it is factual matter. There's the earlier proceeding in which Mr. Stone interacted with Sutton Park. And then there's the contemporaneous documents indicating that Mr. Stone was friends with Mr. Love, right? So aren't those facts from which you might infer some kind of relationship between them? Well, they're a relationship, obviously, but that would also mean that within my boutique practice of legal malpractice, I have conflicts of interest with the five primary plaintiffs counsel that handled these cases. That's an absurd allegation that you can be on adverse sides of a transaction. And that creates the concurrent client conflict of interest. So your position would be if, in fact, they had factual allegations that could show a kind of collusive relationship that might state a viable claim, and they just haven't shown those factual allegations. And so for that reason, we should decide that amendment would be futile. So that's your position. Our primary position is that no collusion has been pled or exists. Correct, Jerome. Okay. If there are no more questions, thank you very much. Oh, sorry. Are there more questions from my colleagues? No, if not, then thank you very much, Mr. Poshia. I will turn to Ms. Jaffrey on rebuttal. Thank you, Your Honors. I'll just address a couple of points. So Ms. Beidle actually brought up the power of attorney. And said that she had not seen the power of attorney. The court did not see a power of attorney. We had no opportunity to provide any power of attorney. We did not know it was an issue because the court never asked for it. Oral argument was scheduled and canceled three times. We had no communications from the court. The court did not give us any sort of direction. So we could obviously supply a power of attorney. But we would need, obviously, to be sent back to the district court. This case would need to be remanded in order for us to do that. In terms of RICO, there was no futility. Or in terms of the decision by the judge, there was no futility finding. And nothing actually states that there's no leap to amend. The court just entered a final order and a judgment. Can you tell me, tell us, what you would put in an amendment? Very briefly, what do you do? What would your amendment look like that would cure the problems that have been discussed? So in terms of Defendant Stone, we would more, we would adequately plead the issues with the collusion. I think I've admitted that I think the collusion is only mentioned in the exhibits. And that is why perhaps the district court judge had only focused on the retaining lien in his decision. He didn't touch on the collusion at all. So I would replead as to the collusion for Defendant Stone. Is there anything you have beyond the emails to indicate collusion? Well, direct testimony from Lori Ghani. And is that, that's not alleged in your current complaint? No, it's not alleged in the current complaint, correct. And what would she say? She would say that Stone and Love have worked together on multiple occasions. They used to work together at the same company. They have a lifelong history and that they've worked, and that Sutton Park refers cases to Edward Stone. They work in the same very small industry. And that they've essentially colluded on cases in the past as well. And how would she know this? From discussions with Edward Stone. She would know that they were friends. More than friends. I mean, I understand. But would she know from something that Stone told her that they colluded? Well, not those words. I don't think that. As if she would say that. And if she could say that, that would be one thing. But if you're saying that they work together in this and this and this way, as you are now saying, that we'd have to look at it and see what that is. Okay. What else would you change if you were allowed to amend? Well, I would hope that the judge would take the power of attorney that Rodney has over Trevor Noel and be able to replead those allegations or just plead those allegations for the first time, because we've gotten no decision. And you're saying the power of attorney gives them the right to sue on his behalf? Yeah. I believe Rule 17c says that. I don't know. I mean, and I've looked at another case. It's not a Second Circuit case, but Gabbard. Absolutely. So I'm not asking whether a power of attorney in general gives them the right to sue on his behalf, although I understand your argument to that effect. I'm asking whether this particular power of attorney authorizes them to sue. Yeah. In the language of the power of attorney? The language of the power of attorney states that Rodney, Lindsay Noel gave Rodney Ghani the power of attorney to handle this specifically or serve as the power of attorney in this specific legal matter. That's what it says in the power of attorney. It's, I think, a one or two page document that I have and I can supply. Was that not before the court before? No, I didn't. I didn't supply it. I didn't see any precedent that I had to put it in the claim. You would make a much stronger argument that the power of attorney would permit these people to sue for her child. Okay, I got that. What else? Well, I feel that the RICO, I feel that my client. I don't want feelings. I want to know what it is that you would say. I've now gotten two things. One, that these people, that she would say that these two lawyers had acted together in these various ways. And two, that the power of attorney, this power of attorney gave power to sue on behalf of a child. What else? I would specifically plead that Lori Ghani, Rodney Ghani, and Trevin Noel were foreseeable plaintiffs for the sake of the RICO claims. And therefore, they do have standing. Good. Thank you. I think I have your argument. I'm sorry I interrupted your rebuttal. Um, go ahead. I'm sorry. Okay. If you want to make one final statement, I think then we'll wrap up. Okay. Well, I think some of the issues that Ms. Beidle and Mr. Procia had brought up were issues of fact. And there were facts that should be determined in discovery. However, we were never given the opportunity to get to discovery. For example, the issue of competence. So I feel, you know, we asked the court today to vacate the dismissal and remand the case so that I can proceed to amending a complaint. That will hopefully survive. And then we can proceed to discovery. Thank you. Okay. Thank you very much, Ms. Jaffrey. The case is submitted. And because that is the only case that we're hearing argument on this morning, we are adjourned. Thank you so much. Thank you, your honors. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.